IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   09-cv-00944-WYD

RICKEY PURDY,

      Applicant,

v.

HOYT BRILL, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

### ORDER OF DISMISSAL

---

      Applicant, Rickey Purdy, is a prisoner currently on probation under the supervision of the Colorado Department of Corrections (DOC).  He has filed a *pro se* Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging his Colorado state conviction in Arapahoe County District Court Case No. 05CR0234.  The Amended Application has been fully briefed by the parties.

      I must construe the Amended Application and other papers filed by Mr. Purdy liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Amended Application will be denied, and the action will be dismissed.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Purdy was charged in Arapahoe County District Court with one count of sexual assault on a child, one count of first degree criminal trespass of an automobile and one count of a violent crime.  (Amended Application attachment at 19).  The evidence at Mr. Purdy's trial was summarized accurately by the Colorado Court of Appeals:

> In 2004, defendant and the ten-year-old victim attended a relative's birthday party.  Defendant chased the victim and other children at the party and made obscene sexual gestures at her.  The victim told her mother about the gestures, and the mother instructed her to get into their car because it was time to leave the party.  The victim and a few other children entered the car and locked the doors.  Defendant entered the car by reaching in through a broken window and undoing the lock.  He then pulled at the victim's clothing and touched her breasts and vaginal area through her clothes while she struggled and screamed for him to stop.  She managed to leave the car, and reported to her mother what had happened.

*People v. Purdy*, No. 06CA0724 (Colo. App. June 12, 2008) (unpublished opinion) (Pre-Answer Resp. Ex. C).

Following his jury trial in December 2005, Mr. Purdy was convicted of sexual assault on a child under the age of fifteen and first degree criminal trespass of an automobile.  He was then sentenced to an indeterminate term of four years to life and a lesser concurrent term for the trespass count.

Mr. Purdy filed a direct appeal challenging his convictions and sentences on numerous grounds.  The Colorado Court of Appeals affirmed the convictions and sentences.  *See People v. Purdy*, No. 06CA0724 (Colo. App. June 12, 2008)

(unpublished opinion).  The Colorado Supreme Court denied Mr. Purdy's petition for

certiorari review on October 6, 2008.  (Pre-Answer Resp. Ex. E).

On February 9, 2009, Mr. Purdy filed a motion for post-conviction relief pursuant

to Colo. Crim. P. Rule 35(b) and for modification of a mandatory sentence for a violent

crime pursuant to Colo. Rev. Stat. § 18-1.3-406.  (Pre-Answer Resp. Ex. A at 15).

While his Rule 35(b) motion remained pending, Mr. Purdy filed an Application for

a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in this Court on April 24, 2009.

He filed an Amended § 2254 Application on August 10, 2009.  In the Amended

Application, Mr. Purdy asserts three claims:

(1)    The prosecutor violated his right to a fair trial by expressing a personal
       opinion on the credibility of a witness, thereby misleading the jury.

(2)    The prosecutor violated his right to a fair trial by making improper
       comments that warranted a mistrial.

(3)    The Colorado Sex Offender Lifetime Supervision Act of 1998 ("CSOLSA")
       violates his right to due process, the Supremacy Clause and constitutes
       cruel and unusual punishment.

On August 14, 2009, Magistrate Judge Boyd N. Boland ordered Respondents to

file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness

under 28 U.S.C. §2244(d) and/or exhaustion of state court remedies under 28 U.S.C.

§ 2254(b)(1)(A).  After receiving an extension of time, Respondents filed their Pre-

Answer Response on September 22, 2009, conceding that the Amended Application

was timely, but arguing that the action should be dismissed as unexhausted due to Mr.

Purdy's Rule 35(b) motion that was pending in state court at that time.  Mr. Purdy filed a

Reply to the Pre-Answer Response on October 7, 2009.

On October 22, 2009, Senior District Judge Zita L. Weinshienk issued an Order to Draw the Case to a District Judge and to a Magistrate Judge.  Judge Weinshienk found that the claims asserted in the Amended Application were timely under 28 U.S.C. § 2244(d).  However, she disagreed with Respondents' argument that the action should be dismissed for failure to exhaust state court remedies based on the fact that Mr. Purdy was pursuing other claims in the Rule 35(b) proceeding that was pending in state court.  Senior Judge Weinshienk noted that "[a]lhough it may be appropriate to delay consideration of Mr. Purdy's properly exhausted claims while the state court postconviction proceedings are pending, the power to delay does not include 'the discretion to dismiss an action properly before the court and within its statutory jurisdiction.'" (Order to Draw Case at 4 (citing *Nowaczyk v. Warden*, 299 F.3d 69, 76-77 (1st Cir. 2002)).

On October 23, 2009, I entered an Order directing Respondents to file an Answer to the Amended Application.  After receiving an extension of time, Respondents filed an Answer on December 14, 2009.  Mr. Purdy did not file a Reply.  On July 22, 2010, and August 23, 2010, the state court records and transcripts were filed in this action.  On October 20, 2010, I entered an Order directing Respondents to file a Supplement to the Answer, and provide additional information regarding the outcome of Mr. Purdy's Rule 35(b) motion, filed on February 9, 2009.  On November 3, 2010, Respondents filed a Supplement to the Answer, stating that on March 1, 2010, the trial court held a hearing on the Rule 35(b) motion, and re-sentenced Mr. Purdy to ten years to life of sex offender intensive supervision probation.  (Supp. Answer Ex. A).

## II.  STANDARD OF REVIEW ON MERITS

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Purdy bears the burden of rebutting the presumption by clear and convincing evidence.

Additionally, I "owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*  I also grant AEDPA deference to state-court decisions that applied a legal standard either identical to the federal standard or more favorable to the habeas applicant than the federal standard.  *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005).

III.  MERITS OF THE CLAIMS

A.  Claim One

Mr. Purdy first asserts that the prosecutor violated his right to a fair trial by

7

expressing a personal opinion on the credibility of a witness, which resulted in a

misstatement of the evidence and mislead the jury.  (Amended Application at 6).  In

addressing this claim, the state appellate court concluded the following:

> 1.  Preserved Claims

> Defendant contends the prosecutor improperly solicited sympathy for the victim and misstated the burden of proof when he stated the following in rebuttal closing argument:

>> If you're going to find the Defendant not guilty, you [sic] got to do it because you absolutely do not believe this child. And [defense counsel] stood up here, and he told you his concern is that you are afraid that if you find not guilty that you're going to be thinking, well, that means we don't believe the child.  That's exactly what it means.  And if you find him not guilty, we go out that door, we go to [the victim] and we tell her, they didn't believe you.

> Because Defendant objected to this comment, we review for harmless error.  We conclude that although the comment was improper, any error was harmless.  Here, the prosecutor's statements regarding the victim's credibility responded directly to defense counsel's closing argument.

> Defense counsel stated generally that children lie, especially about sex assault.  He also challenged the victim's credibility and argued that she accused defendant of assaulting her to gain her mother's attention. [Citations omitted].  Here, the prosecutor's comments made up a very small part of his closing and rebuttal closing arguments, which consist of more than twenty-eight pages of transcript. [Citation omitted].

> Furthermore, the trial court sustained defendant's objection.  The trial court also instructed the jury before the trial began that opening and closing statements are not evidence and that the jury was not permitted to consider any evidence to which an objection was sustained and should treat such evidence "as if you had never seen it or heard it."  The jury was also given a proper credibility instruction after closing arguments. [Citation omitted].  Where, as here, there is nothing in the record to suggest the contrary, the jury is presumed to have followed the instruction. [Citation omitted].

Accordingly, considering the nature of the asserted defense and the context in which the prosecutor's remark was made, we conclude that the prosecutor's comment did not substantially influence the verdict or adversely affect the fairness of the proceedings. [Citation omitted].

2.  Unpreserved Claims

Defendant asserts the prosecutor made further improper comments during opening statement and rebuttal closing argument, and that those comments warrant reversal.  We conclude that while certain comments were improper, they do not warrant reversal.

Defendant contends the prosecutor's opening statement suggested an improper burden of proof and discussed facts that were not introduced into evidence.  The prosecutor stated, "[The victim] isn't making this up or exaggerating this.  Kids don't make up that they were groped by a grown man . . . . If you think this child is lying about all of this, you need to find him not guilty."  This statement was improper.

Defendant also challenged as improper the prosecutor's statements during rebuttal, in which he commented on the victim's success in school and told the jury, "[W]e don't want to just kick [her] back out to the curb."  While we agree that the latter comment was improper, we disagree that noting her success in school was improper.

Defendant also argues the prosecutor implied he knew facts not presented to the jury when he commented, "We just spent a week of your time, wasted, because nothing happened in this case.  We took her to [a facility that investigates child sexual abuse].  But nothing happened.  That doesn't make any sense."  We agree that this comment was improper.

However, we conclude that although some of these comments were improper, they do not warrant reversal.

Because defendant did not object to these comments, we review them for plain error. [Citations omitted].  We conclude that none of the above-mentioned comments were flagrant, or glaringly or tremendously improper, and they did not deprive defendant of his right to a fair and impartial trial. [Citation omitted].  Some of the comments properly responded to defendant's attack on the victim's credibility.  Accordingly, we conclude that to the extent these comments were error, the error was not plain and does not warrant reversal.

(Pre-Answer Resp. Ex. C at 6-10).

Allegations of prosecutorial misconduct are mixed questions of law and fact. *See Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). Instead, pursuant to the rule set forth in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974), habeas relief is available for claims of prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair.

The courts must "consider the probable effect the prosecutor's statement would have on the jury's ability to judge the evidence fairly." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998)). In making this assessment, the courts should examine whether "the prosecutor's argument . . . manipulate[d] or misstate[d]" the evidence, "whether it impacte[d] other specific rights of the accused such as the right to counsel or the right to remain silent," whether "the objectionable content was invited by or responsive to the opening summation of the defense," and whether "[t]he weight of the evidence against petitioner was heavy." *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986). "Any cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks," are also relevant. *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted).

Moreover, "it is not enough that the prosecutors' remarks were undesirable or

even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted).  Instead, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

With this standard in mind and having considered the entire record, I find that Mr. Purdy has failed to show that the state appellate court's rejection of this claim was contrary to or an unreasonable application of the governing *Donnelly* standard.  I have reviewed the prosecutor's closing argument, in addition to rebuttal closing argument. (Trial Transcript, p. 886-899, 925-940).  I agree with the conclusion of the appellate court that the majority of the prosecutor's challenged comments were invited by defense counsel's arguments that children lie about sexual assault, and that the victim may have lied to gain her mother's attention.  During closing argument, defense counsel stated:

> Children are more prone to wanting to please adults, to wanting to give responses that the adults want to hear.  And what you heard is that those responses then become absorbed into the child's own memory, and the child then believes that it actually took place.  That's what suggestibility is. And it exists. . . . Children do lie.  They lie about all kinds of things, and they certainly lie about sexual assault.

(Trial Court Transcript, p. 905-906).  Defense counsel later stated:

> Nothing comes from a vacuum and this young girl is taken to this birthday party by her mother, who doesn't live with her.  Her mother now says she sees her about once a week.  This is her mother.  Her mother takes her to this party where there are all these other people and all these other kids, and these girls that are her same age.  You don't think that's an emotionally charged environment for a 10-year-old girl? You don't think a 10-year-old girl in that circumstance isn't going to want attention?  It's clear she wants attention. . . .

(Trial Court Transcript, p. 908).

"In this context, defense counsel's conduct, as well as the nature of the

11

prosecutor's response, is relevant." *Young*, 470 U.S. at 12 (citations omitted).  During

rebuttal closing, the prosecutor responded to defense counsel's attacks on the

credibility of the victim, first making a point to summarize the arguments, and then

rebutting them, as set forth above by the appellate court.  (Trial Court Transcript, p. 925-

940).  Like the Colorado Court of Appeals, I conclude that the prosecutor's statements

concerning the victim's credibility responded directly to the arguments first raised by

defense counsel in his closing argument.  Therefore, I find it possible that "any potential

harm from this remark was mitigated by the jury's understanding that the prosecutor

was countering defense counsel's repeated attacks on the [victim's credibility] and the

defense counsel's argument that the evidence established no such crime." *Young*, 470

U.S. at 17; *cf. Darden*, 477 U.S. at 181 (finding no unfair trial when record showed that

prosecutorial statements were made in response to defense counsel).  I also find that

these comments made up a very small and isolated portion of the prosecution's lengthy

closing argument and rebuttal argument.  *See Anaya v. Romero*, 627 F.2d 226, 228

(10th Cir. 1980) (isolated comment vouching for credibility of state's witness did not

make trial so constitutionally infirm as to justify federal habeas corpus relief).

Accordingly, when "[v]iewed in context, the prosecutor's statements were not such as to

undermine the fundamental fairness of the trial and contribute to a miscarriage of

justice." *Young*, 470 U.S. at 16.

        In addition, the trial court properly instructed the jury that opening and closing

statements are not evidence, and that the jury was not permitted to consider any

evidence to which an objection was sustained.  (Trial Court Transcript, p. 357, 359-60,

872).  A reviewing court "presume[s] that the jurors conscientiously observed the instructions and admonitions of the Court.  Speculation that this was not done cannot be employed in assailing the jury's verdict, in the absence of a showing of facts proving otherwise."  *United States v. Morris*, 623 F.2d 145, 148 (10th Cir. 1980) (citing *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972)); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (finding that jurors are presumed to follow the instructions given). Mr. Purdy has failed to present any facts demonstrating that the jury disregarded the instructions of the trial court.  Therefore, like the state court, I find that Mr. Purdy has not demonstrated that the prosecutor's closing argument had the effect of preventing the jury from judging the evidence fairly or reaching a verdict in accordance with the instructions provided.  *See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998).

Considering the entire record and the deference the AEDPA affords to state court decisions, I conclude that the decision of the Colorado Court of Appeals was not contrary to or an unreasonable application of *Donnelly*.   Accordingly, Mr. Purdy is not entitled to habeas relief on claim one.

B.  Claim Two

In his second claim, Mr. Purdy asserts that the "prosecution introduced improper comments which warrant[ed] a mistrial."  (Amended Application at 6).  In addressing this claim, the Colorado Court of Appeals concluded:

> During closing argument, the prosecutor argued that the evidence supported a conviction of sexual assault on a child, not the lesser offense of attempt.  The prosecutor also stated during his rebuttal closing, "We didn't charge [defendant] with [attempted sexual assault].  Criminal attempt is not the case . . . . That's a compromise.  It's not fair to either side."  Defendant did not object to either comment.

13

During deliberations, the jury asked the court which party had inserted the lesser charge of attempted sexual assault. The court responded that the instructions came from the court, and it refused defendant's suggested instruction, which explained that attempted sexual assault is necessarily included in the offense of sexual assault on a child. On the following day of deliberations, defendant moved for a mistral, contending that the prosecutor's comment to the jury regarding which party requested a lesser included jury instruction constituted prosecutorial misconduct. The trial court denied the motion, but stated that the prosecutor's remark "came very close to being prosecutorial misconduct."

The prosecutor did not state defendant requested the lesser included charge. Nor did defendant contemporaneously object to either comment. Because we conclude the trial court properly responded to the jury's question by stating that the instructions came from the court, we cannot say that there was any prejudice to defendant by the court or the prosecutor. [Citations omitted]. Accordingly, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

(Pre-Answer Resp. Ex. C at 11-13).

With the *Donnelly* standard in mind and having considered the entire record, I find that Mr. Purdy has made no showing that the state appellate court's rejection of this claim was contrary to or an unreasonable application of the governing standard. The prosecutor's comments regarding the lesser included offense were innocuous and extremely brief. (Trial Court Transcript, p. 939). At no time did the prosecutor indicate that the lesser included offenses were actually proffered by Mr. Purdy. Moreover, the trial court instructed the jury that the instructions came from the court. Again, the jury is presumed to follow its instructions, *Weeks*, 528 U.S. at 234, even when there has been misleading argument. *See Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court"). Mr. Purdy has not shown that the prosecutor's comments during

14

closing argument rendered his trial fundamentally unfair.  *See Donnelly*, 416 U.S. at

642-48.  Because the appellate court's decision was not contrary to or an unreasonable

application of the *Donnelly* standard, and the decision was not based on

an unreasonable determination of the facts in light of the evidence presented at his trial,

Mr. Purdy is not entitled to habeas relief on claim two.

      C.    Claim Three

As his third claim, Mr. Purdy asserts that the Colorado Sex Offender Lifetime

Supervision Act ("CSOLSA") violates his right to due process, the Supremacy Clause

and constitutes cruel and unusual punishment.  (Amended Application at 6).

Specifically, he alleges that the trial court misapplied CSOLSA by imposing both a

minimum sentence and a life sentence.

As a preliminary matter, Respondents argue that Mr. Purdy has failed to exhaust

in the state courts his claim that CSOLSA violates the Supremacy Clause.  Having

reviewed Mr. Purdy's opening brief on appeal, I agree that Mr. Purdy failed to raise a

claim that CSOLSA violates the Supremacy Clause in the state courts.  (Pre-Answer

Response Ex. B, p. 45-46).  Accordingly, I find that Mr. Purdy failed to present this

specific federal issue raised in his § 2254 Amended Application to the state appellate

court.

Mr. Purdy must exhaust his available state remedies before raising his claims in

federal court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner

must "give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process");

*Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland*, 459 F.3d at 1011 (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "The exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  Mr. Purdy bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.1992).

If a habeas petitioner has not exhausted his state remedies, his petition is generally denied without prejudice so that he may present his claims to the state court. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991). However, if "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have procedurally defaulted his claims and federal habeas review is precluded.  *Id.* at 755 n. 1.  Here, no further state court remedy exists as any future claim would be denied as successive under Colo. R. Crim. P. 35(c)(3) because it could have been presented in an appeal or postconviction proceeding previously brought, *see* Rule 35(c)(3)(VII).  A federal district court "does not address issues that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns.  *See Coleman,* 501 U.S. at 730.  Mr. Purdy's *pro se* status does not exempt him from the requirement of demonstrating either cause and

prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy,* 38 F.3d 1128, 1130 (10th Cir. 1994).  Mr. Purdy does not provide any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action.  Therefore, I find and conclude that the portion of Mr. Purdy's third claim challenging CSOLSA as a violation of the Supremacy Clause must be dismissed as procedurally defaulted.

With respect to the remaining portion of Mr. Purdy's third claim, which alleges that CSOLSA violates his right to due process and to be free from cruel and unusual punishment, I likewise find that these arguments lack merit.

First, to the extent that Mr. Purdy alleges that the sentencing court misapplied CSOLSA, such a claim is not cognizable on federal habeas review.  Violations of state law are not cognizable in a federal habeas proceeding.  *See* 28 U.S.C. § 2254 (district court shall entertain application of a writ of habeas corpus only if the petitioner is in custody in violation of the Constitution or laws treaties of the United States); *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law") (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Second, to the extent that Mr. Purdy challenges Colorado's statutory scheme for sentencing sex offenders on the basis of federal law, this claim also fails.  In addressing this claim, the state appellate court rejected Mr. Purdy's constitutional challenge based upon its prior decisions in *People v. Oglethorpe*, 87 P.3d 129, 133-36 (Colo. App. 2003) and *People v. Strean,* 74 P.3d 387, 394-95 (Colo. App. 2002), in which the defendants raised similar challenges.

17

1.    Due Process

In *Oglethorpe,* the Colorado Court of Appeals analyzed a defendant's due

process claim as follows:

> Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard.  Due process is a flexible standard, which recognizes that not all situations calling for procedural safeguards require the same procedure. [Citation omitted].
>
> Replying on *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 435 (2000), defendant argues that he has the right to proof beyond a reasonable doubt and a jury finding that he will likely reoffend.  He asserts the General Assembly should not be allowed to presume that all sex offenders will reoffend and therefore require them all, indiscriminately, to serve indeterminate life sentences.  We are not persuaded.
>
> In *Specht v. Patterson, supra*, the Supreme Court held that a 1968 Colorado sex offender statute violated due process because it did not give a defendant notice and an opportunity to be heard before the court made a finding justifying imposition of an indeterminate sentence.  That statute applied if the court found that a defendant convicted of a specific sex offender, if at large, constituted a threat of bodily harm to members of the public or was an habitual offender and mentally ill.
>
> The Supreme Court in *Apprendi v. New Jersey, supra*, held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum for that crime must be submitted to the jury and proved beyond a reasonable doubt.
>
> Here, defendant pleaded guilty to a sex offense after being fully advised of the charge, his rights, and the potential sentences, and stating that he understood them.  He was asked whether he had any questions and whether he admitted the charge.  Defendant asked no questions and admitted his guilty.  Thus, he was provided an opportunity to be heard on the sentence to be imposed.
>
> Although defendant argues the Act relies on generalized legislative findings to justify indeterminate sentencing in all cases, subject to

constitutional limitations it is the prerogative of the General Assembly to define crimes and prescribe punishments. Courts therefore exercise discretion in sentencing only to the extent permitted by statute. [Citations omitted]. Here, the Act requires the court to give the offender an indeterminate sentence. [Citations omitted]. Further, as the People note, unlike the 1968 statute and *Apprendi*, no additional finding beyond the conviction was required before defendant was subject to indeterminate sentencing.

. . . .

Defendant nevertheless asserts that the Act fails to provide an adequate continuing opportunity to be heard on the issue of release after the sentence has been imposed. We reject this argument.

After the minimum period of incarceration imposed is completed, the parole board schedules a hearing to determine whether the sex offender may be released on parole. Colo. Rev. Stat. § 18-1.3-1006(1)(a) (2002). Under that section, the parole board must determine, inter alia, "whether there is a strong and reasonable probability that the person will not thereafter violate the law." If parole is denied, the Act provides for review by the parole board at least once every three years. Colo. Rev. Stat. § 18-1.3-1006(1)(c) (2002). These opportunities satisfy continuing procedural due process requirements. [Citations omitted].

*Oglethorpe*, 87 P.3d at 133-34.

In *Specht v. Patterson*, the United States Supreme Court held that a prior version of Colorado's Sex Offender's Act violated due process because it made one conviction the basis for commencing a second proceeding that required the trial court to make a new finding but did not provide for the defendant the presence of counsel, the opportunity to be heard, the confrontation of adverse witnesses, or cross-examination. 386 U.S. at 608-11.

In this case, Mr. Purdy does not allege that he did not have an adequate opportunity to be heard on the sentence to be imposed. Instead, Respondents assert, and Mr. Purdy does not contest, that he was present with counsel at the sentencing

hearing, that five family members spoke on his behalf, and that the mother of the victim also spoke on behalf of the victim. (Answer at 24). Therefore, I find that Mr. Purdy had both notice and an opportunity to be heard before the trial court made a finding justifying imposition of an indeterminate sentence. Accordingly, Mr. Purdy was afforded the opportunities absent in *Specht*. The decision of the Colorado Court of Appeals, which reached the same conclusion, was neither incorrect nor objectively unreasonable.

The Colorado Court of Appeals also concluded that CSOLSA did not violate the United States Supreme Court's holding in *Apprendi*, 530 U.S. at 490. The primary holding of Apprendi was that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. However, like the state appellate court, I find that CSOLSA does not require any additional findings beyond the fact of the conviction before a defendant becomes subject to indeterminate sentencing. Instead, the imposition of a prison sentence for an indeterminate term of at least the minimum of the presumptive range specified for the level of offense committed and a maximum of life is based entirely on the fact of a conviction of a sex offense. *See* Colo. Rev. Stat. § 18-1.3-1004(1)(a) ("the district court . . . shall sentence a sex offender to the custody of the department for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for at least the level of offense committed and a maximum of the sex offender's natural life.").

20

In this case, Mr. Purdy was convicted by a jury of the class 4 felony of sexual assault on a child in violation of Colo. Rev. Stat. § 18-3-405(1).  In addition, Colo. Rev. Stat. § 18-1.3-1003(5)(a)(IV) provides that "'Sex Offense' means . . . (IV) Sexual assault on a child as a described in section 18-3-405."  Therefore, no additional finding beyond the conviction of a sex offense was required before Mr. Purdy was subject to indeterminate sentencing. The decision of the Colorado Court of Appeals, which reached the same conclusion, was neither incorrect or objectively unreasonable.

Finally, the Colorado Court of Appeals also reasonably concluded that CSOLSA does not deny a sex offender the "continuing opportunity to be heard on the issue of release after the sentence has been imposed," because triennial review by the Colorado Parole Board is sufficient to comport with due process.  *Oglethorpe,* 87 P.3d at 134.

The threshold question in any due process analysis is whether a liberty interest is implicated.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979) (applying *Greenholtz*).  Here, the Colorado State parole board's entirely discretionary decision does not implicate a constitutional liberty interest.  That is, Mr. Purdy has no liberty interest in parole through the Due Process Clause itself.  *See Greenholtz*, 442 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1995).  Mr. Purdy's interest in release "is indistinguishable from the initial resistance to being confined," and that interest was extinguished by his conviction

21

and sentence.  *Greeholtz*, 442 U.S. at 7; *see also Martinez v. Patterson*,

429 F.2d 844 (10th Cir. 1970) (holding that constitutional due process safeguards are

not implicated in matters involving state parole hearings).

However, a liberty interest in parole may be created if the state uses mandatory

language in its statutory scheme.  *Greenholtz*, 442 U.S. at 11-12, *Board of Pardons v.*

*Allen*, 482 U.S. 369, 375-78 (1987).  Respondents point out that CSOLSA uses

mandatory language only with regard to a triennial hearing "to determine whether the

sex offender may be released on parole."  Colo. Rev. Stat. § 18-1.3-1006(1)(a).  The

statute provides, in relevant part,

> (1)(a) On completion of the minimum period of incarceration specified in a
> sex offender's indeterminate sentence . . . the parole board shall schedule
> a hearing to determine whether the sex offender *may be released on*
> *parole.*  In determining whether to release the sex offender on parole, the
> parole board shall determine whether the sex offender has successfully
> progressed in treatment and would not pose an undue threat to the
> community if released under appropriate treatment and monitoring
> requirements and whether there is a strong and reasonable probability
> that the person will not thereafter violate the law. . . .

Colo. Rev. Stat. § 18-1.3-1006(1)(a) (emphasis provided).  Here, the discretionary

"may" is used with regard to the parole board's ultimate determination whether to

release a sex offender on parole.  Colo. Rev. Stat. § 18-1.3-1006 also provides for

continuing review by the Colorado Parole Board:

> (c) If the parole board does not release the sex offender on parole
> pursuant to paragraph (a) of this subsection (1), the parole board shall
> review such denial at least once every three years until it determines that
> the sex offender meets the criteria for release on parole specified in
> paragraph (a) of this subsection.

Colo. Rev. Stat. § 18-1.3-1006(1)(c).  Section 18-1.3-1006 clearly sets out the

procedures to be followed when a convicted sex offender is evaluated for parole.  At the

most, the statute may create a constitutionally protected interest in receiving

consideration for parole, during the inmate's triennial hearing.  Mr. Purdy does not

allege that inmates have been denied consideration for parole or triennial hearings

under CSOLSA.  Accordingly, because Mr. Purdy has no liberty interest in parole under

Colorado's system and thus is not entitled to any additional due process protections,

the decision of the Colorado Court of Appeals was neither incorrect or objectively

unreasonable.

2.      Cruel and Unusual Punishment

In *Oglethorpe*, the defendant argued that CSOLSA "violates the constitutional

provisions against cruel and unusual punishment because the life sentence imposed in

most cases will be disproportionate to the crime."  87 P.3d at 135.  In rejecting this

argument, the Colorado Court of Appeals concluded the following:

> The constitutional prohibition against cruel and unusual punishment
> does not require strict proportionality between the crimes committed and
> the sentence imposed.  Instead, it forbids only extreme sentences that are
> "grossly disproportionate" to the crime.  [Citations omitted].

> When a defendant asserts that a sentence is grossly
> disproportionate to the crime committed, a proportionality review is
> undertaken.  An abbreviated proportionality review, in which only the
> gravity of the crime and the sentence imposes are considered, is all that is
> required when the offense is a serious one.  Great deference must be
> afforded to the General Assembly's authority to establish the punishments
> for crimes.  [Citation omitted].

> Here, defendant argues only that his sentence is disproportionate
> when compared to class one felonies.  However, defendant admitted
> sexually assaulting a four-year-old girl.  He enticed her, along with her little
> brother, to leave the play area of their apartment complex and follow him

> to a secluded area where the assault took place. The trial court, in finding extraordinary aggravating circumstances, noted the appalling nature of the crime. Testimony indicate the victim and her family were suffering lingering effects from the incident. Thus, we conclude defendant's sentence is not disproportionate to the offense.
>
> In view of this disposition and because it would entail speculation, we need not determine whether a life sentence in other cases would be disproportionate to the crime.

*Oglethorpe*, 87 P.3d at 135.

The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). "The Eighth Amendment contains a narrow proportionality review principle that applies to noncapital cases." *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) (quotation marks and alterations omitted) (citing *Ewing v. California*, 538 U.S. 11, 20 (2003)). Under this narrow principle, the Constitution does not require the crime and the sentence to be strictly proportional. *Id.* Instead, "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 20 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual punishment under the Eighth Amendment. *See United States v. Hughes*, 901 F.2d 830, 832 (10th Cir. 1990). Therefore, the "'[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Angelos*, 433 F.3d at 751 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003)).

Further, "[i]n view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended

analysis to determine that a sentence is not constitutionally disproportionate." *Solem*, 463 U.S. at 290.  Indeed, the Supreme Court "has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies . . . ." *Angelos*, 433 F.3d at 750 (citing *Weems v. United States*, 217 U.S. 349 (1910) and *Solem*, 463 U.S. at 277).

Considering all of the above, I find that decision of the Colorado Court of Appeals, which concluded that CSOLSA does not impose disproportionate sentences, was neither incorrect nor objectively unreasonable.  First, CSOLSA provides opportunity for parole after a minimum sentence, in addition to triennial review for parole.  *See* Colo. Rev. Stat. § 18-1.3-1006*.*  In *Rummel v. Estelle*, 445 U.S. 263, 272 (1980), the Supreme Court concluded that the defendant's life sentence under a recidivist statute did not violate the Eighth Amendment.  The *Rummel* Court found it significant that the defendant had the possibility of parole, and concluded that the possibility of parole, however unlikely, distinguished the defendant from someone serving a life sentence without parole.  *Id.* at 280-81.  The *Rummel* Court determined that, consistent with the deference to the sovereignty of the states to determine crimes and  sentences, "the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."  *Id.* at 285.  Moreover, there is no doubt that sexual assaults on a child, or any other type of sexual assaults,

are very grave offenses. *See Ewing*, 538 U.S. 22 (directing the courts to review the gravity of the offense to determine if it matches the severity of the punishment).  Finally, the indeterminate sentences imposed by CSOLSA do not resemble the sentences of disproportionate severity that the Supreme Court has struck down in the past.  *See, e.g., Weems*, 217 U.S. 349; *Solem*, 463 U.S. at 277.

In light of the Supreme Court cases set forth above and the Colorado legislature's proper role in setting sentencing ranges, I find that the sentences imposed by CSOLSA do not present "an extraordinary case," and therefore, this decision was not an unreasonable application of clearly established federal law.  *Lockyer*, 538 U.S. at 76.  Therefore, I find and conclude that Mr. Purdy is not entitled to federal habeas relief on his third claim.  Accordingly, it is

ORDERED that Applicant Rickey Purdy's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 10) is **DENIED** and the action is **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that no certificate of appealability will issue because Mr. Purdy has not made a substantial showing of the denial of a constitutional right.

Dated:  March 4, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge